**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Radmila Balayan,

Petitioner,

v.

Unknown Party,

Respondent.

No. CV-26-00072-PHX-SMB

**ORDER**

Petitioner Radmila Balayan filed this action under 28 U.S.C. § 2241 challenging her immigration detention. (Doc. 1.) Magistrate Judge Fine issued a Report and Recommendation ("R&R") recommending that the Petition be denied based in part on the Supreme Court's decision in *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020). (Doc. 17.) Petitioner filed objections. (Doc. 18.) Petitioner also filed a Motion for Expedited Consideration. (Doc. 19.) For the reasons below, the Court accepts the R&R in part, rejects it in part, and grants the Petition.

## I. Background

Petitioner, a native and citizen of Armenia, presented herself for inspection at the Otay Mesa Port of Entry on November 18, 2024, and has remained in immigration custody ever since. (Doc. 17 at 2.) She was found inadmissible and served with a notice and order of expedited removal, but after she expressed a fear of returning to Armenia, an asylum officer determined that she had established a credible fear of persecution or torture. (*Id.*) She was then placed in full removal proceedings, where her merits hearing

was set to continue on February 24, 2026. (*Id.*) Petitioner anticipates further appellate review depending on the outcome of those proceedings. (Doc. 16 at 2, ¶ 4.) She is detained at the Eloy Detention Center. (Doc. 17 at 1.)

Petitioner concedes that she is an arriving noncitizen detained under 8 U.S.C. § 1225(b), which by statute does not entitle her to a bond hearing. (Doc. 17 at 4); *see Jennings v. Rodriguez*, 583 U.S. 281, 297-300 (2018). Her only avenue to release is discretionary parole under 8 U.S.C. § 1182(d)(5)(A), the outcome of which is not reviewable by an immigration judge. (Doc. 17 at 5; Doc. 16 at 11, ¶ 38.) She has never received a hearing on whether her continued detention is justified. She seeks release or, alternatively, an individualized bond hearing at which the government must justify her detention by clear and convincing evidence. (Doc. 18 at 5.)

## II. Legal Standard

A district judge must "make a de novo determination of those portions" of a magistrate judge's "report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.* The Court need not review portions of the R&R to which no objection is made. *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).

## III. Discussion

### A. Unobjected-To Portions of the R&R

Petitioner's objections are directed to the R&R's constitutional analysis, specifically its conclusion that *Thuraissigiam* and *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206 (1953), limit her to the rights afforded by statute. (Doc. 18 at 2-4.) She does not dispute the R&R's conclusions that the Court has jurisdiction under § 2241, that her detention is statutorily authorized by § 1225(b), or that 8 U.S.C. § 1231 and *Zadvydas v. Davis*, 533 U.S. 678 (2001), do not directly govern because she is not subject to a final order of removal. (*See* Doc. 17 at 3-5.) The Court adopts those portions of the R&R. *See Reyna-Tapia*, 328 F.3d at 1121.

### B. *Thuraissigiam* Does Not Foreclose Petitioner's Due Process Claim

The R&R reasoned that because Petitioner was detained after arriving at a port of entry, she is "on the threshold of initial entry" and has no due process rights beyond those Congress has provided. (Doc. 17 at 5-6); *see Thuraissigiam*, 591 U.S. at 107 ("[T]he Court long ago held that Congress is entitled to set the conditions for an alien's lawful entry into this country and that, as a result, an alien at the threshold of initial entry cannot claim any greater rights under the Due Process Clause. . . . [Thuraissigiam] therefore has no entitlement to procedural rights other than those afforded by statute.").

On September 21, 2026, after the R&R issued, the Ninth Circuit rejected the government's argument that *Thuraissigiam* forecloses due process rights, beyond those Congress grants by statute, for noncitizens who entered the country unlawfully. *Padilla v. U.S. Immigr. & Customs Enf't*, --- F.4th ----, 2026 WL 2822044, at *10-11 (9th Cir. Sept. 21, 2026). The Ninth Circuit wrote that "[t]he government's boundless proposition is nowhere to be found in *Thuraissigiam*," *id.* at *14, and emphasized that "[t]he right to due process is conferred, not by legislative grace, but by constitutional guarantee," *id.* (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985) (citation modified)). It held that *Thuraissigiam's* due process limits apply only to noncitizens "at the threshold of initial entry." *Id.* at *11 (quoting *Thuraissigiam*, 591 U.S. at 107).).

That holding does not by itself resolve this case. The *Padilla* class was limited to noncitizens who entered without inspection, so it "exclude[d] individuals encountered at a point of entry." *Id.* at *13. Petitioner, by contrast, presented herself at a port of entry, and *Padilla* recognized that the entry fiction still "encompasses those apprehended at or very near a point of entry and then either paroled into the United States or detained in the United States pending a determination of their admissibility." *Id.* But *Padilla* was precise about what the entry fiction does. Such individuals are "treated as if stopped at the border" only "with respect to certain legal rights," and it is their "due process rights regarding admission" that are limited to "[w]hatever the procedure authorized by Congress is." *Id.* (quoting *Mezei*, 345 U.S. at 212, 215). The entry fiction therefore

defines the process Petitioner is due in determining whether she may be admitted. It does not answer whether the government may hold her in prolonged detention, without any individualized hearing, while that determination is made.

*Padilla* answered that separate question as well. In Section II.B.2 of its opinion, the court held that *Thuraissigiam* does not govern due process challenges to detention because "*Thuraissigiam* was an admission, not a detention, case." *Id.* at *19. The court explained that "[a]dmission and detention occupy fundamentally different positions in our legal order," and that "[u]nlike the political branches' plenary power over admission, the principle that the government cannot arbitrarily detain people, including noncitizens, has been a central tenet of British and American legal traditions since the thirteenth century." *Id.* at *16 (footnote omitted). *Thuraissigiam* itself "made no mention of release from custody" and held only that a noncitizen in Thuraissigiam's position "has only those rights regarding admission that Congress has provided by statute." *Id.* at *16 (quoting *Thuraissigiam*, 591 U.S. at 115, 140) (emphasis omitted). Judge Friedland did not join Section II.B.2, reasoning that the threshold holding was sufficient to resolve the certified questions. *Id.* at *19 (Friedland, J., concurring in part). But that section was joined by a majority of the panel, and the majority expressly relied on it as an independent basis for its holding. *Id.* at *19 ("For that reason, as well as because it was specifically limited to noncitizens at the 'threshold of initial entry,' it has no application here . . . ."). It is therefore binding in this circuit. *See Barapind v. Enomoto*, 400 F.3d 744, 750-51 (9th Cir. 2005) (en banc) (per curiam).

District courts in this circuit have since applied *Padilla*'s distinction between admission and detention, including to a noncitizen whose status regarding admission was that of an arriving noncitizen. *See Kleber Vasquez v. Hernandez*, No. 2:26-cv-02873-TMC, 2026 WL 2936770, at *2 (W.D. Wash. Sept. 30, 2026) (addressing a noncitizen detained after expiration of her § 1182(d)(5)(A) parole and explaining that "while [the petitioner's] legal status regarding admission reverted to that of an arriving noncitizen once her parole expired, the Due Process clause continued to require constitutionally

adequate procedures surrounding her detention”); *Marquez v. Warden, Desert View Facility*, No. 5:26-cv-05368-MBK, 2026 WL 2948874, at *4 (C.D. Cal. Oct. 1, 2026) (emphasizing *Padilla*’s recognition that “the government cannot arbitrarily detain people, including noncitizens” (citation modified)); *Alarcon Bayas v. Warden, Cent. Valley Annex Det. Facility*, No. 1:26-cv-08333-DAD-JDP (HC), 2026 WL 3136201, at *1 (E.D. Cal. Oct. 20, 2026) (concluding that *Padilla* confines *Thuraissigiam*’s due process limitation to admission and does not affect the process required to detain a noncitizen).

Whatever reservations the Court may have about the Ninth Circuit’s reasoning, *Padilla* is binding, and the Court must apply it here. Petitioner does not challenge the procedures governing her admission; she challenges her continued detention, for nearly two years, without any individualized hearing. (Doc. 18 at 2-5.) Whatever limits the entry fiction places on her admission-related rights, it does not strip her of the protection against arbitrary detention that the Due Process Clause guarantees. The Ninth Circuit decisions on which the R&R relied are consistent with this conclusion, because each involved a challenge to admission-related procedures in the expedited removal process rather than to detention. *See Padilla*, 2026 WL 2822044, at *13; *Mendoza-Linares v. Garland*, 51 F.4th 1146, 1167 (9th Cir. 2022) (challenge to negative credible fear determination); *Guerrier v. Garland*, 18 F.4th 304, 310 (9th Cir. 2021) (challenge to lack of counsel at credible fear interview).

Nor does *Mezei* compel a different result. *Mezei* concerned a noncitizen who had been permanently excluded, without a hearing, on national-security grounds, and who remained on Ellis Island because no other country would accept him. 345 U.S. at 208-09. The Court held that “[w]hatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned.” *Id.* at 212 (citation modified). As *Padilla* explains, that principle defines the “due process rights regarding admission” of those on the threshold of entry. *Padilla*, 2026 WL 2822044, at *13. Petitioner, by contrast, has not been denied entry. An asylum officer found that she has a credible fear of persecution or torture, her admissibility remains to be adjudicated in full removal

proceedings, and nothing in the record suggests she has been excluded on national-security grounds. *Mezei* does not hold that a noncitizen whose admissibility is still pending may be held for years without any individualized determination that her detention is warranted.

### C. The *Mathews* Factors Require an Individualized Bond Hearing

Because *Thuraissigiam* does not foreclose Petitioner's claim, the Court turns to what process is due. *Padilla* did not decide that question. *Padilla*, 2026 WL 2822044, at *19 n.16. As the Ninth Circuit did in *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022), the Court assumes without deciding that the balancing test of *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), governs. That test weighs three factors: (1) the private interest affected; (2) the risk of erroneous deprivation through the procedures used and the probable value of additional safeguards; and (3) the government's interest, including the burdens additional procedures would entail. *Mathews*, 424 U.S. at 335.

The R&R also reasoned that Petitioner's detention is not indefinite because her removal proceedings are ongoing. (Doc. 17 at 5-6.) But due process concerns are not limited to detention that is literally indefinite. The question is whether the procedures afforded are adequate given the length and circumstances of the deprivation, which is what the *Mathews* test measures.

First, Petitioner's interest in freedom from detention is substantial. *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992); *see Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects."). That interest carries particular weight here. Petitioner has been detained since November 18, 2024, which is nearly two years and considerably longer than the fourteen months of post-hearing detention at issue in *Rodriguez Diaz*. 53 F.4th at 1206-07. Unlike the detainee in *Rodriguez Diaz*, Petitioner has never received an individualized hearing and has no means of obtaining one if her circumstances change. *Cf. id.* at 1207. The end of her detention is also not in sight. Her merits proceedings remain pending, she anticipates

appellate review of any adverse decision, and the R&R itself recognized that "the procedural posture pertinent to the Petition is not likely to change soon." (Doc. 17 at 7; *see* Doc. 16 at 2, ¶ 4.) Petitioner further alleges that her detention is causing physical and mental health problems. (Doc. 10 at 1.) This factor weighs heavily in Petitioner's favor.

Second, the risk of erroneous deprivation is high, and the probable value of additional safeguards is substantial. In nearly two years of detention, no neutral decisionmaker has ever assessed whether Petitioner's detention is necessary to prevent flight or protect the community. As an arriving noncitizen detained under § 1225(b), she is ineligible for a custody redetermination before an immigration judge, *see* 8 C.F.R. § 1003.19(h)(2)(i)(B); *Jennings*, 583 U.S. at 297-300, and her only other path to release is parole, a discretionary determination made by the same agency that detains her and not reviewable by an immigration judge. (Doc. 17 at 5; Doc. 16 at 11, ¶ 38.) That stands in contrast to the procedures the Ninth Circuit found sufficient in *Rodriguez Diaz*, where the detainee received a bond hearing before an immigration judge, could appeal to the Board of Immigration Appeals, could seek a new hearing upon changed circumstances, and could seek further review in federal court. 53 F.4th at 1209-10. Petitioner has received none of those safeguards. An individualized hearing before a neutral decisionmaker would substantially reduce the risk that she is detained when detention serves no legitimate purpose.

Third, the government has legitimate and significant interests in enforcing immigration laws, ensuring that noncitizens appear for their proceedings, and protecting the public. *Id.* at 1208. But the relevant question under *Mathews* is the government's interest in the challenged procedure—here continued detention without any individualized assessment—and the burden that additional process would impose. The government has no legitimate interest in detaining a noncitizen who poses no danger and whose risk of flight can be addressed through bond or alternative conditions. *See Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017). A bond hearing serves, rather than undermines, the government's interests by identifying those noncitizens whose

detention is actually warranted. The administrative burden of such a hearing is modest, as immigration judges routinely conduct custody hearings for noncitizens detained under § 1226(a). *See* 8 C.F.R. § 1003.19. And the record contains no individualized finding that Petitioner poses a danger or flight risk, because no such inquiry has ever been made.

The first two factors weigh in Petitioner's favor, and the government's legitimate interests can be fully protected through an individualized hearing. Due process therefore requires that Petitioner receive such a hearing before her detention may continue. Because Petitioner is entitled to relief on this ground, the Court does not reach her remaining arguments.

**IT IS THEREFORE ORDERED** that the Report and Recommendation (Doc. 17) is **accepted in part** and **rejected in part**. The Court adopts the R&R's conclusions that the Court has jurisdiction and that Petitioner's detention is statutorily authorized by 8 U.S.C. § 1225(b). The Court rejects the R&R's conclusion that *Thuraissigiam* forecloses Petitioner's due process claim.

**IT IS FURTHER ORDERED** that Petitioner's objections (Doc. 18) are **sustained** to the extent stated in this Order.

**IT IS FURTHER ORDERED** that the Petition for Writ of Habeas Corpus (Doc. 1) is **granted**. Within seven (14) days of this Order, Respondent shall either release Petitioner on appropriate conditions of supervision or provide her an individualized bond hearing before an immigration judge, notwithstanding 8 C.F.R. § 1003.19(h)(2)(i)(B). At that hearing, the government shall bear the burden of proving by clear and convincing evidence that Petitioner poses a danger to the community or a risk of flight that cannot be reasonably mitigated by alternatives to detention. In setting any bond, the immigration judge shall consider Petitioner's ability to pay and alternative conditions of release. If the government does not meet its burden, Petitioner shall be released on appropriate conditions of supervision.

…

…

**IT IS FURTHER ORDERED** that any remaining pending motions are **denied** as moot. The Clerk of Court shall enter judgment accordingly and close this case.

Dated this 26th day of October, 2026.

Honorable Susan M. Brnovich
United States District Judge